IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| EDM CORPORATION, | ) | CASE NO. BK08-40788-TLS |
| | ) | |
| Debtor(s). | ) | CH. 7 |

## ORDER

Hearing was held in Lincoln, Nebraska, on November 24, 2009, on TierOne Bank's objection to Scott Street Enterprises' claim (Fil. #180) and resistance by Scott Street Enterprises (Fil. #181). Victor E. Covalt III appeared for TierOne Bank, and Kathryn J. Derr appeared for Scott Street Enterprises.

EDM Corporation was a dealer of emergency vehicles, with dealerships in Nebraska and Iowa. Scott Street Enterprises leased commercial real estate in Des Moines, Iowa, to EDM via a written lease entered into on April 1, 2005. The term of the lease was from August 1, 2005, through July 30, 2010. From and after August 1, 2005, EDM maintained at the leased premises personal property which it owned and used or stored at the leased premises during the term of the lease. EDM filed its Chapter 7 bankruptcy petition on April 10, 2008. Scott Street Enterprises asserts a secured claim to the extent of the value of the personal property located at the leased premises as of the commencement of the case by virtue of its statutory lien and possession of the property, and an unsecured claim for the balance owed for breach of the lease. Scott Street Enterprises filed an amended proof of claim in the bankruptcy proceeding on October 16, 2009, for $91,722.93. Creditor TierOne Bank objects to the amount of the claim, arguing that Scott Street Enterprises included more in its claim that the statutorily allowed amount of rent it is due.

The lease agreement contains the following provision for rent:

2. RENTAL. Tenant agrees to pay to Landlord as rental for the term, as follows: $3,937.50 per month, in advance, the first rent payment becoming due upon August 1, 2005, and the same amount, per month, in advance, on the 1st day of each month thereafter, during the term of this lease.

In addition to the above monthly rental Tenant shall also directly pay: utilities, taxes, insurance, dumpster and lawncare services as set forth below. All sums to be paid to the Landlord shall be paid at the address of Landlord, as above designated, or at such other place in Iowa, or elsewhere, as the Landlord may, from time to time, designate in writing. Delinquent payments shall draw interest at 18% per annum from the due date, until paid.

Lease attached to Claim No. 57-1.

In subsequent paragraphs of the lease, EDM agreed to furnish and pay the costs of trash pickup, janitorial services, and the utilities and services for the common areas. *Id.* at 5. EDM also agreed to pay all of the real estate taxes and "special assignments" and purchase personal property insurance and liability insurance. *Id.* at 6-7.

The applicable statute regarding the allowance of Scott Street Enterprises' claim for the termination of the lease is 11 U.S.C. § 502(b)(6).[1] The issue in this case is the meaning of the phrase "rent reserved" in that section. Scott Street Enterprises argues that the term includes the real estate taxes, insurance, and utility charges that EDM agreed in the lease to pay. TierOne Bank argues that the term means only the amount designated in the lease as "rent" because a definition encompassing other expenses would permit a landlord to recover a greater share of the debtor's limited assets than would be fair to other creditors.

The caselaw across the country favors Scott Street Enterprises' position. Most courts agree that real estate taxes, insurance, and maintenance charges for which the tenant is contractually obligated are included as "rent" in the § 502(b)(6) calculation. *Kuske v. McSheridan (In re McSheridan)*, 184 B.R. 91 (B.A.P. 9th Cir. 1995), *overruled on other grounds by Saddleback Valley Cmty. Church v. El Toro Materials Co. (In re El Toro Materials Co.)*, 504 F.3d 978 (9th Cir. 2007); *In re Foamex Int'l, Inc.*, 368 B.R. 383 (Bankr. D. Del. 2007); *Smith v. Sprayberry Square Holdings, Inc. (In re Smith)*, 249 B.R. 328 (Bankr. S.D. Ga. 2000); *In re Andover Togs, Inc.*, 231 B.R. 521 (Bankr. S.D.N.Y. 1999); *In re PPI Enter. (U.S.), Inc.*, 228 B.R. 339 (Bankr. D. Del. 1998), *aff'd*, 324 F.3d 197 (3d Cir. 2003); *In re Rose's Stores, Inc.*, 179 B.R. 789 (Bankr. E.D.N.C. 1995); *In re Gantos, Inc.*, 181 B.R. 903 (Bankr. W.D. Mo. 1995); *In re Farley, Inc.*, 146 B.R. 739 (Bankr. N.D. Ill. 1992); *Heck's, Inc. v. Cowron & Co. (In re Heck's, Inc.)*, 123 B.R. 544 (Bankr. S.D.W. Va. 1991).

---

[1]That section provides:

   (b) [I]f [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that —
      . . .
      (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds —
         (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of —
            (i) the date of the filing of the petition; and
            (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
         (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates[.]

Many courts follow what has become known as the *McSheridan* test, following the Ninth Circuit Bankruptcy Appellate Panel's pronouncement in that case. The elements of the *McSheridan* test are:

> 1) The charge must: (a) be designated as "rent" or "additional rent" in the lease; or (b) be provided as the tenant's/lessee's obligation in the lease;
>
> 2) The charge must be related to the value of the property or the lease thereon; and
>
> 3) [T]he charge must be properly classifiable as rent because it is fixed, regular or periodic charge.

184 B.R. at 99-100.

Iowa law corresponds in essence to the *McSheridan* test. In Iowa, the term "rent" "means the whole amount paid, or agreed to be paid, by the tenant to the landlord for the use of the premises; and the whole of the rent includes all of its parts, whether called 'rental reserved' or 'additional rent' in the lease."[2] *Miles Corp. v. Lindel*, 107 F.2d 729, 731 (8th Cir. 1939). In the Iowa cases holding that rent does not include taxes, maintenance, and insurance, the distinguishing factor appears to be the lease's characterization of the payments, specifically defining rent and not including such payments in that definition. *East Broadway Corp. v. Taco Bell Corp.*, 542 N.W.2d 816, 821 (Iowa 1996); *Lamoine Mott Estate v. Neiman (In re Garver Hardware Co.)*, 77 F.2d 744 (8th Cir. 1935).

Here, the EDM-Scott Street Enterprises lease includes utility/maintenance, tax, and insurance payments in the "Rental" paragraph. Although the court cannot rely on the labels attached by the parties and must make its own determination of the scope of the term "rent," *McSheridan*, 184 B.R. at 99, its independent review of the lease provisions leads to the conclusion that the real estate taxes, insurance, and certain fixed property maintenance costs are in fact part of the rent to be paid by EDM. These payments meet all of the prongs of the *McSheridan* test because they each are regular periodic charges and each relates to the value of the property. Insurance, taxes, and services such as lawncare and snow removal are all clearly items that affect the value of the property and the lease. The provision for utility payments is less viable as "rent" because usage of electricity, gas, water and sewer, and so forth fluctuates with occupancy of the premises. *Andover Togs*, 231 B.R. at 540; *Heck's, Inc.*, 123 B.R. at 546. Such charges may be elements of damages for breach of the lease, but they are not includable in the § 502(b)(6) calculation.

---

[2]TierOne makes the argument that because the law requires items characterized as rent to be paid "to" the landlord, charges payable to other entities, as here, do not constitute rent. It would seem logical that the relevant inquiry in determining whether certain items are "rent" or not is the nature of the expense and not the payee. There is some authority in the income tax arena that "to a landlord" and "on behalf of a landlord" mean the same thing. "Taxes paid by a tenant to or for a landlord for business property are additional rent and constitute a deductible item to the tenant and taxable income to the landlord . . . ." *Beck v. F.W. Woolworth Co.*, 111 F. Supp. 824, 829 (N.D. Iowa 1953) (quoting Treas. Reg. 111 § 29.23(a)-10).

Accordingly, Scott Street Enterprises' § 502(b)(6) claim may include the items listed in paragraph 2 of the lease, except for utilities.

TierOne also argues that because Scott Street Enterprises took possession of the premises in April 2008, after the bankruptcy was filed, and changed the locks to prevent EDM's access while preserving custody of the personal property inside as security for its landlord's lien, it cannot claim rent past that date.

Scott Street Enterprises had a duty to mitigate its damages, and the amount received in mitigation is deducted from the total damages before the § 502(b)(6) cap is applied. *In re Bob's Sea Ray Boats, Inc.*, 143 B.R. 229, 231 (Bankr. D.N.D. 1992); *see also In re Timber Lodge Steakhouse, Inc.*, 377 B.R. 604, 606 n.1 (Bankr. D. Minn. 2007), and *In re Lapke*, Case No. BK07-81140-TJM, 2008 WL 355575 (Bankr. D. Neb. Jan. 23, 2008).

The personal property on the premises was sold by the bankruptcy trustee as of January 5, 2009. The estate owned the property and stored it in Scott Street Enterprises' premises until that time, so it is unlikely Scott Street Enterprises could have relet the premises prior to that date. Scott Street Enterprises' efforts to secure the property post-petition does not rise to the level of asserting control over the property for its own purposes and does not constitute a reletting.

IT IS ORDERED: TierOne Bank's objection to Scott Street Enterprises' claim (Fil. #180) is sustained with respect to the utility charges. It is overruled in all other respects. Scott Street Enterprises' claim is allowed in the amount of $91,303.00.

DATED:      December 21, 2009

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Victor E. Covalt III
    Kathryn J. Derr
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.